UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) CRIMINAL NO. 07-10176-DPW |
| v. | ) |
| | ) |
| JAMES WALKER, | ) |
| Defendant. | ) |

MEMORANDUM
December 21, 2007

The defendant has been charged with the offense of
distributing cocaine within 1,000 feet of a playground in
violation of 21 U.S.C. § 860.  The government contends the entire
Boston Common is a playground for purposes of § 860 and that §
860 is applicable because the alleged transaction took place
approximately 300 feet from the edge of the Common.  The
defendant concedes that the Boston Common contains among other
facilities a totlot, ballfields and a skating rink; but he seeks
a pretrial ruling construing the term "playground" under 21
U.S.C. § 860 to constitute less than the entirety of the Common,
in order to present a defense on the basis that the alleged drug
transaction took place more than 1,000 feet from a playground.
In response to the request of the parties, I offer these
preliminary observations in anticipation of the hearing later
today.

I share the view of the Tenth Circuit that

> The term "playground" can have varied
> meanings.  To some, a playground could be a
> cow pasture; to others, a fenced-in surface
> of asphalt; and to still others, a playground
> is a place containing various apparatus.
> Congress chose to define the term in a
> specific manner, and, consequently, proof
> must be adduced in order to sustain a jury's
> conclusion that a playground was involved.

*United States v. Smith*, 13 F.3d 380, 382 (10th Cir. 1993).

Accordingly, I turn to the words of the statute.

Section 860(a) provides that any person who engages in the knowing and intentional distribution of a "controlled substance in or on, or within one thousand feet of, the real property comprising . . . a playground" may be punished more severely than one who engages in such distribution elsewhere.

Section 860(d) defines a "playground" as

> any outdoor facility . . . intended for
> recreation, open to the public, and with any
> portion thereof containing three or more
> separate apparatus intended for the
> recreation of children including but not
> limited to, sliding boards, swingsets, and
> teeterboards.

The threshold question therefore is whether the entire Boston Common is "real property comprising a playground."  I have had occasion recently to construe the plain meaning of the word "comprise" in the different context of a patent case.  *Cytyc Corp. v. Tripath Imaging, Inc.*, 505 F.Supp.2d 199, 216-17, n.15, (D. Mass. 2007).  There, I observed that an important distinction exists between the word "comprise" and "includes"--a word for

which "comprise" is sometimes erroneously, and over the counsel

of usage experts, substituted:

> The distinction is concisely stated in
> Gowers.  "The difference between *comprise* and
> *include* is that *comprise* is correct when all
> the components are enumerated and *include*
> when only some of them are."  Sir Ernest
> Gowers, *The Complete Plain Words* 215 (S.
> Greenbaum & J. Whitcut revision) (3d. ed.
> 1988).

> Jacques Barzun has urged writers "to
> make the effort of coming to terms with
> *include, compose* and *comprise*." Jacques
> Barzun, *Simple & Direct: A Rhetoric for
> Writers* 128 (rev. ed. 1994).  Barbara
> Wallraff explains that "[t]he reason *comprise*
> is confusing to many people is the same
> reason that it's useful: It doesn't work the
> same way as similar words."  Barbara
> Wallraff, *Word Court* 176 (2000).

> Among those concerned with maintaining
> meaningful linguistic distinctions, the
> difference between "comprise" and "include"
> continues to be observed.

> The preeminent Twentieth Century
> newspaper copy editor explained that
> "[c]omprise has the meaning of contain,
> embrace, include and comprehend . . . The
> whole *comprises* the parts, not the reverse."
> Theodore M. Bernstein, *The Careful Writer: A
> Modern Guide to English Usage* 113 (1965).  He
> further observed that "[t]he word *include*,
> however, usually suggests that the component
> items are not being mentioned in their
> entirety.  If all are being mentioned it
> would be better to write 'The seven were . .
> .'; or, if there is an irresistible urge for
> a fancy word, to use *comprised*."  *Id.* at 228.

> Similarly, a journeyman book of American
> usage cautions writers to "be careful to use
> *include* only of incomplete lists: A baseball
> team is made up of nine players.  It *includes*

3

> a pitcher, a catcher, and four infielders.
> It is *composed* of these, plus three
> outfielders.  (And the team *comprises* these
> nine players; they *compose* the team.)"
> Kenneth G. Wilson, *The Columbia Guide to
> Standard American Usage* 106 (1993).
>
>     Of course the distinctiveness of words
> in common and ordinary meaning can be eroded
> when those bodies charged with superintending
> language . . . neglect the distinctions.
> Thus, the former editor of the Oxford English
> dictionaries has reported from the field that
> "*[c]omprise* is . . . competing with *include*".
> *The New Fowler's Modern English Usage* 387 (3d
> ed. 1996).  Nevertheless in this competition
> he finds that the differences still remain:
> "[w]hen two words such as *include* and
> *comprise* have roughly the same meaning,
> examination will generally reveal a
> distinction; and the distinction between the
> present two seems to be that *comprise* is
> appropriate when the content of the whole is
> in question, and *include* only when the
> admission or presence of an item is in
> question."

*Id.* at 217.

Observing the appropriate linguistic distinctions, I
conclude that only the real property facility intended for
recreation that contains the requisite apparatus for children is
within the scope of § 860.  The entirety of real property that
merely includes, among other things, such recreational
opportunities, is not necessarily within § 860's scope.

Although the question is a factual one which ultimately must
be decided, if necessary, by a finder of fact, it does not appear
that the entirety of Boston Common is within § 860.  Commentators
have described the Boston Common as multipurpose real estate

intended for more than just recreation.  *See generally*, David
Hackett Fischer, *Boston Common, in American Places*, 125-143
(William E. Leuchtenburg ed., 2000); Susan Wilson, *Boston Sites
and Insights*, 251-57 (1994).  For example, a burial ground with
487 headstones lies within the Common.  *Id*. at 255.  And the
property is populated by an extensive collective of public
statuary.  Marty Carlock, *A Guide to Public Art in Greater
Boston*, 30-32 (1988).

The various purposes for which the real property of the
Boston Common has been intended have evolved and proliferated
over the past nearly four centuries of the Common's existence.
Boston purchased the 50 or so acres of open land which now
comprise the Boston Common in 1634.  "In English custom, the
colonists set aside the field for common use, in particular
miliary training and the grazing of cattle."  Friends of the
Public Garden, *Images of America: Boston Common* 7 (2005).  "By
1830, the City had banished the cows."  *Id*. at 8.  And, while as
a general proposition, "[b]y the 1850s, the Common, now
surrounded by residential neighborhood, had become a natural
playground for children," *id*. at 44, that use of the term
"playground" is not necessarily coincident with the precise
definition found in § 860(d).  "The Common today . . . is a
valued resource of the people of Boston and many thousands of
annual visitors--a place of sports, informal and organized;

exhibitions; musical events; a Shakespeare festival; rallies and protests; charity and art shows; and on New Year's Eve, Boston's famous First Night." *Id*. at 9.

To be sure, there are now outdoor facilities of the type specified by § 860 for the recreation of children within the Boston Common.  Yet, while "[t]he Common has always been a resort for children, . . . there was no children's playground until about 1950.  In 2002 this facility was renewed through private benefactors as the Tadpole Totlot." *Id*. at 127.  I note that the Boston Common now includes not merely a renewed totlot but also those separate elements such as "tennis courts, ballfields, and a skating rink" having characteristics the Ninth Circuit has found, and I agree, are "apparatus intended for the recreation of children." *United States v. Migi*, 329 F.3d 1085, 1089 (9th Cir. 2003).  But these various apparatus would appear to be only part of the real property which comprises the Boston Common. Currently, and through its history, the Common has reportedly "comprised" a good deal more than apparatus for recreation.

I recognize that some courts have been satisfied that identification of real property as a "park" can be sufficient to conclude that the property is necessarily an outdoor facility open to the public and intended for recreation.  See *United States v. Parker*, 30 F.3d 542, 552 (4th Cir. 1994).  But with respect, I find the use of the term "park" as a shorthand

definition for playground has deflected more thorough pursuit of

the scope of the statutory definition of playground.  Surely, not

all "parks" can necessarily be said to be entirely playgrounds

within the meaning of § 860, even if they have three separate

apparatus intended for the recreation of children.  Parks, after

all, come in various sizes and flavors.  It would stretch the

limitations of § 860 well beyond their breaking point to say that

the entirety of any such real property containing the requisite

apparatus was a playground.  Consider for example, the 2,221,766

acres of Yellowstone National Park.  It is inconceivable that

every place in, on and within 1,000 feet of the perimeter of such

a park can be said to fall within § 860.[1]

I find the Massachusetts version of a law similar to § 860

to be instructive.  The state statute punishes intentional drug

distribution "within one hundred feet of a public park or

playground."  Mass. Gen. Laws ch. 94C § 32J.  Although the state

---

[1]Although the opinions have not always been explicit on the
point, the reported cases appear to concern specifically
recreational parks smaller than the Boston Common, let alone this
country's great National Parks.  Internet research discloses, for
example, that Honolulu's 'A'ala Park at issue in *United States v.
Migi*, 329 F.3d 1085 (9th Cir. 2003), the only case cited by the
government, is a pocket park of less than an acre.  And,
according to the website of the City of Charlottesville, Tonsler
Park, the land discussed in *United States v. Parker*, 30 F.3d 542
(4th Cir. 1994) is 7.4 acres and includes a recreation center,
tennis and basketball courts, and playground equipment.  I note
further that in *United States v. Smith*, 13 F.3d 380 (10th Cir.
1993), the court determined that no reasonable jury could convict
the defendant under § 860 because the government had failed to
present any evidence that Crawford Park, a 24-acre park in Tulsa,
had the requisite three apparatus.  *Id.* at 382.

statute cannot provide specific guidance regarding what the
United States Congress meant when it used the term "playground"
in § 860, the statute does provide evidence of the ordinary
meaning of "recreation" in the context of parks and playgrounds.
Massachusetts courts interpreting the statute have noted the
disjunctive quality of "park" and "playground," *Commonwealth v.
Davie*, 703 N.E.2d 236, 2398 (Mass. App. Ct. 1998), and have found
Boston Common to be a "public park" containing more than just a
playground.  *Commonwealth v. Graham*, 55 Mass. App. Ct. 1104, at
*1 (2002) (unpublished opinion).  The Appeals Court in *Davie*
noted that in dictionaries and prior caselaw a park has been
defined variously "as a place of beauty or of public recreation,"
"maintained for recreational or ornamental purposes," and
"maintained for the purposes of pleasure, exercise, amusement or
ornament."  46 Mass. App. at 28.  It would appear, although this
also is a question of fact, that while Boston Common is a park,
it has several purposes beyond mere recreation.  For present
purposes, however, I conclude as a matter of law that a park--
particularly one of the Boston Common's size, history and
ornamentation--may comprise more than a "playground" as defined
in § 860.

Giving the words "comprise" and "recreation" in § 860 their
ordinary meaning requires a focus on the discrete real property
areas which actually comprise a playground.  Accordingly, without

8

further refinement at this time, I hereby preliminarily advise the parties that the fact finder in this case will be instructed that it will not be sufficient to satisfy § 860 for the government merely to prove that the drug transaction at issue here took place within 1,000 feet of the Boston Common.  Rather, the government must prove beyond a reasonable doubt that the transaction took place within 1,000 feet of some distinctive playground facility (and its curtilage) located within the Boston Common.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE